Filed 3/17/25  Hartman v. Hartman CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ELENA HARTMAN, <br><br> Petitioner and Appellant, <br><br> v. <br><br> MICHAEL HARTMAN, <br><br> Respondent and Appellee. | A169243 <br><br> (San Mateo County Super. Ct. No. 19-FAM-02147) |

Elena Hartman appeals from the trial court's statement of decision resolving financial matters arising from her divorce with Michael Hartman.[1] Elena argues that the trial court's decision does not account for Michael's stocks and stock options as income in its calculations for spousal and child support, and that, notwithstanding her failure to object, the trial court should have excluded portions of Michael's trial testimony on hearsay and other grounds.  Michael did not file a brief on appeal.

The trial court relied on the parties' premarital agreement and the formula it contains to calculate spousal support.  It concluded that a guideline child support award was appropriate, but that Michael's current income—in the form of stocks—could not, at the time of the trial, be deemed actual income for purposes of calculating child support.  The court deferred

---

[1] The parties share a surname, so we refer to them by their first names.

inclusion of any stock, stock options, or similar forms of compensation in the income calculation until such assets could be valued more precisely, at which point they would be deemed actual income subject to the guideline support calculation.

We affirm, concluding that Elena has not demonstrated that the trial court abused its discretion.

## BACKGROUND

Elena and Michael were married in 2010 and separated in 2019. In 2023, the court held a five-day trial on all financial matters arising from the parties' 2020 divorce. The parties had a valid and binding premarital agreement, and after trial they entered into a partial settlement agreement. The premarital agreement set forth a formula for calculating spousal support, which the court applied to determine that Elena owed Michael $33,627 in support annually for two years.

The trial court also ordered child support using the standard guideline, along with an annual "true-up" process requiring the parties to exchange actual income information and to make equalizing payments accordingly. The court denied Elena's request to impute income to Michael, citing the evidence regarding his ability and opportunity to work, his earning capacity as compared to his actual income, and the specific circumstances set forth in Family Code section 4058, subdivision (b)(2). The court explained that Elena bore the burden to present evidence regarding Michael's earning capacity, but that it had insufficient information to impute income to him.

The court considered the testimony provided by the parties' experts regarding Michael's work and noted Michael's unpaid role as a consultant to a company that offered him stock as compensation, rather than cash. "Whenever [cash] compensation is received," the court explained, "that

compensation shall be income available for the purposes of the [preceding] child support calculation." Further, if "compensation is received in the form of stock, stock options, or other similar forms and there are restrictions on [Michael's] ability to sell, income available for support shall be deemed to be available once restrictions on the exercise and sale have been lifted."

The court also denied Michael's request to impute further income to Elena, explaining that it was using the parties' actual income to calculate child support. The court denied Elena's further child support requests for lack of supporting evidence, and then discussed the division of the parties' assets. Relying on the premarital agreement, the court confirmed that two companies were Michael's sole and separate property. Although Elena claimed income from these businesses, she had already agreed that they were Michael's separate property. As to both businesses, there was no evidence of ongoing material value except as earned through Michael's "post-separation efforts," and the premarital agreement established that any business goodwill was Michael's separate property. The court found Michael's testimony on these points credible.

The court discussed the allocation of other disputed assets and in particular addressed Elena's challenge to Michael's use of certain funds from their joint bank account. As to those expenditures, the court explained, Michael provided a spreadsheet tracing the funds, most of which were spent for joint purposes, with the remainder split between the parties. The court found Michael's testimony regarding the joint account credible and denied Elena's further requests as unsupported by the evidence.

## DISCUSSION

### I. Standard of Review

We review the trial court's order for abuse of discretion. (*In re Marriage of Sawyer* (2020) 57 Cal.App.5th 724, 732.) We review the

court's findings of fact for substantial evidence and questions of law de novo. (*Ibid.*)

## II.     Challenges to the Statement of Decision

Elena challenges the trial court's rulings on several grounds.  First, she contends, the trial court's child and spousal support[2] rulings did not account for deferred income that Michael received as stock and stock options. Relatedly, she contends that stock options are income whether or not they are exercised and that Michael's stock options should have been treated as income for purposes of his support obligations.  She next argues that the trial court should have considered as income the significant, recurrent gifts Michael received in 2023 from his mother's trust.

In her brief, Elena does not acknowledge the premarital agreement or the spreadsheet Michael produced tracing expenditures from the parties' joint bank account.  She mentions the parties' partial settlement agreement only once, in passing, to say that she executed it under duress.  Instead of acknowledging these material evidentiary bases for the trial court's rulings, Elena's presentation of the facts is one-sided.  It includes legal argument and assertions that she was the victim of abuse, coercion, and misconduct by Michael and that there was "an undercurrent of prejudice by the [t]rial [c]ourt against Elena from the first day of trial through judgment," without mentioning the trial court's reasoning or its findings that Elena failed to meet her evidentiary burden as to her related requests for spousal and child support and the division of the parties' assets.  Because Elena did not comply with her duty to present a fair summary of the facts, we could deem her

---

[2] Elena does not distinguish in her brief between the court's rulings as to child and spousal support.  Neither do we, except when necessary.

arguments relating to those facts forfeited. (*Hoglund v. Sierra Nevada Memorial-Miners Hospital* (2024) 102 Cal.App.5th 56, 75, fn. 3.)

Elena's argument that the trial court failed to account for Michael's monthly income of $12,000 is belied by the record. First, without a record citation to any particular tax return, Elena asserts that tax returns must be deemed presumptively correct as to a parties' income. That argument does not help her: Michael's tax return for the relevant time period reflects a net loss of $88,671. Second, the cited income was not paid as cash, or "actual" income. As Elena acknowledges and the trial court explained, Michael's $12,000 monthly income was converted to debt in the form of stock. The trial court specified that, as to both parents, it would rely on actual income to determine the appropriate child support amount, and that if and when Michael's stocks were sold, they would then be treated as income for purposes of the formula already provided to calculate the parents' support obligations.

The cases Elena cites support the trial court's reasoning. (See *In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1375–1376 (*Pearlstein*); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 287–288.) In determining proper support awards, California courts recognize that valuing stock and stock options may be difficult, and in particular that it can be difficult to determine *when* such assets may be treated as income. (*Cheriton*, at pp. 287–288.) For example, case law has established that the latest point at which stock options may be valued and treated as income is when the underlying stock is sold for a gain. (*Id.* at p. 288; see also *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 518, 532, 535 (*Macilwaine*) [once all legal restrictions on sale of stock options are removed, the options must be treated as income for purposes of support calculation];

5

*Pearlstein*, at pp. 1375–1376 [court erred in treating father's stock as income before it was liquidated by sale].) Here, the trial court expressly acknowledged the potential value of any stock and stock options that Michael received. It explained, however, that it would reserve the valuation of those assets for a time when they had been liquidated or all restrictions on their sale were lifted, respectively, and once a value could be assigned to them, the stock and stock options would be treated as actual income for child support purposes. Under *Cheriton*, *Pearlstein*, and *Macilwaine*, that approach is not error.

As to the gifts Michael received from his mother in 2023, "the principal amount of a gift[ or] inheritance . . . need not be treated as income for child support purposes, at least where, as here, the child is not receiving public assistance." (*Pearlstein, supra*, 137 Cal.App.4th at p. 1373.) Elena has not cited a case that stands for the proposition that the trial court's failure to impute these gifts to Michael as income was error. She relies primarily on *In re Marriage of Alter*, where the court concluded that gifts may, in a court's discretion and depending on the circumstances and nature of the gift, be considered income, but that the question "whether gifts should be considered income for purposes of the child support calculation is one that must be left to the discretion of the trial court." (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 737.) Here, although the trial court did not directly address the gifts from Michael's mother in its statement of decision, the issue was raised at trial as a matter of whether the gifts (or loans, as Elena at times characterized them) should be imputed to him as income for purposes of child support. Elena acknowledges here that the gifts (or loans) ranged in amount from $3,000 to $15,000. Consequently, it was within the court's

6

discretion not to impute them to Michael as income because they were not "periodic and regular" like traditional forms of income. (*Ibid.*)

In a last effort, Elena argues that although she failed to object at trial to the admission of certain evidence, the admission resulted in a miscarriage of justice and is therefore reversible. She fails to support this assertion adequately, citing only Michael's "statements regarding medical diagnosis or tax law that were blatant hearsay, lacked foundation, or strayed into expert testimony," and subdivision (b) of Evidence Code section 353. She suggests that these statements were aspersions on her that impacted her credibility. But section 353 of the Evidence Code sets forth a conjunctive test, whereby under subdivision (a) a trial objection is required, and in subdivision (b) the court evaluates prejudice. Because she has not met the requirement in subdivision (a) that she objected to Michael's testimony, she cannot invoke subdivision (b) to establish error. Elena's citation to *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 similarly does not establish that we should excuse her failure to object. Instead, after assuming error, the court in *Cassim v. Allstate Ins. Co.* applied a prejudice analysis to conclude that any error was harmless. (*Ibid.*) Even if we were to deem the objections not forfeited, *and* we were to conclude now that her belated and non-specific objections are meritorious, Elena has not established how they prejudiced her.

Elena presents significant argument regarding the standard of review, contending essentially that even though the abuse of discretion standard is deferential, we may not abdicate our responsibility to provide reasoned review. We agree with that general premise. We " 'do not[, however,] substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged

7

order.' " (*Macilwaine*, *supra*, 26 Cal.App.5th at p. 527.) We do not reweigh evidence or make credibility determinations in the first instance. (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 500.) In sum, although Elena disputes the trial court's rulings, and views the evidence differently than the trial court did, she has not identified error. We therefore cannot conclude that the court abused its discretion.

## DISPOSITION

The judgment is affirmed. Michael is entitled to recover his costs, if any, on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SIMONDS, J. *

---

* Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8